UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FELIPE AGUILAR GAMA,<br><br>                Petitioner,<br>   v.<br><br>PAMELA BONDI, et al.,<br><br>                Respondents. | CASE NO. 2:25-cv-01925-TL<br><br>ORDER ON WRIT OF HABEAS CORPUS |

This matter is before the Court on Petitioner Felipe Aguilar Gama's Petition for Writ of Habeas Corpus ("Habeas Petition"), which asserts that Petitioner's detention is illegal under the Bona Fide Determination ("BFD") of deferred action. Dkt. No. 1 at 2. Having considered Petitioner's petition, Federal Respondents' return memorandum (Dkt. No. 7), Petitioner's reply (Dkt. No. 9), and the relevant record, the Court GRANTS Petitioner's petition.

## I. BACKGROUND

Petitioner is a Mexican native and citizen of Mexico. Dkt. No. 1 at 1 ¶ 1. In September 2005, he was removed from the United States to Mexico. *Id*. at 4 ¶ 12. Within a few months, he

re-entered the United States without inspection; he has remained here for roughly 20 years. *Id*. On April 23, 2024, Petitioner's wife filed an I-918 Petition for U Nonimmigrant Status ("U-visa") with the United States Citizenship and Immigration Services ("USCIS"). *Id*. ¶ 13. Petitioner's wife included him as a qualifying family member on the application, and both Petitioner and his wife submitted paperwork seeking employment authorization. *Id*. On April 20, 2025, "USCIS issued a determination that Petitioner's I-918, Supplement A is bona fide and that he qualifies for deferred action and employment authorization while he awaits a U visa to become available under the statutory cap." *Id*. ¶ 14. A few days later, USCIS issued Petitioner a BFD Employment Authorization Document ("EAD"). *Id*.

On or about September 15, 2025, immigration officials reinstated an order of removal against Petitioner. *Id*. ¶ 15. That same day, Petitioner was arrested and detained in the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where he has been held ever since. *Id*. Petitioner is held pursuant to 8 U.S.C. § 1231(a). Dkt. No. 7 at 1.

On October 3, 2025, Petitioner filed the instant petition. Dkt. No. 1. That same day, Petitioner filed a motion for a temporary restraining order ("TRO"), seeking a court order preventing his removal from the United States and/or his transfer to a different detention facility during the pendency of the Habeas Petition. Dkt. No. 2 ¶ 1. The Court granted the TRO and ordered the Parties to meet and confer on how to proceed. Dkt. No. 3. The Parties agreed to forgo the TRO, in favor of expedited briefing of the Habeas Petition. Dkt. No. 7 at 10. Respondents agreed not to remove Petitioner from the United States or transfer him to another facility while the petition remains pending. *Id*.

## II.   LEGAL STANDARD

Courts grant habeas corpus petitions to persons who can show they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

ORDER ON WRIT OF HABEAS CORPUS – 2

The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody . . . ." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 302 (2001)). District courts have statutory and inherent power to grant such petitions. *See Ozturk v. Trump*, 779 F. Supp. 3d 462, 486–87 (D. Vt. 2025) (citing *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001)).

### III.  DISCUSSION

Petitioner asserts that his detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. Dkt. No. 1 at 2 ¶ 6. Respondents argue that the Court does not have jurisdiction to halt the execution of a valid order of removal, and that deferred action granted through BFD does not preclude U.S. Immigration and Customs Enforcement ("ICE") from executing the valid removal order. *See* Dkt. No. 7 at 2.

**A.  Jurisdiction**

Respondents argue that the Court lacks jurisdiction under 8 U.S.C. § 1252(g). *Id*. at 10. Respondents claim that the instant petition arises out of Petitioner's contention that the deferred action he received as part of the U visa BFD process defers his removal and that this claim directly arises from Respondents' decision to execute a removal order. *Id*. Petitioner argues the Court does have jurisdiction over this matter. Dkt. No. 9 at 1. Petitioner makes clear that his claim "arises from the government's grant of deferred action, combined with ICE's subsequent refusal to honor that grant, not from any discretionary decision to execute his removal over [sic]." *Id*. at 1–2; *see* Dkt. No. 1 at 7–8. Petitioner does not raise any issue with the validity of the removal order itself. Dkt. No. 9 at 2.

Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). The Supreme Court has interpreted Section 1252(g)'s jurisdiction-stripping provisions narrowly and has limited its application to only "three discrete actions": the decision or action to (1) commence proceedings; (2) adjudicate cases; or (3) execute removal orders. *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 482 (1999). The Supreme Court not only rejected any reading of the statute that would cover "the universe of deportation claims," *id*., but has also cautioned against interpreting it to "sweep in any claim that can technically be said to 'arise from'" these three actions, *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018).

"[T]he proper jurisdictional analysis under Section 1252(g) focuses on the government action or decision that gives rise to the plaintiff's claims, not whether the plaintiff's claims might affect or preclude removal." *Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 908 (W.D. Wash. 2025). The Ninth Circuit applied this principle in *Arce v. United States*, where the plaintiff had been wrongfully removed to Mexico, in direct violation of an order for temporary stay of removal. 899 F.3d 796, 798 (9th Cir. 2018). Upon the Department of Homeland Security's ("DHS") return of the plaintiff to the United States, the plaintiff brought a Federal Tort Claims Act (FTCA) claim for damages on the wrongful removal. *Id*. The Government argued that the FTCA claim was barred under Section 1252(g) because it arose from the execution of the plaintiff's removal. *Id*. at 799. The court held that the plaintiff was "not attacking the removal itself, as he does not challenge the validity of his removal order . . . . Instead, he points out—correctly—that the Attorney General lacked the authority to execute the removal order because of the stay of removal issued by our court." *Id*. at 800. The Ninth Circuit went on to say that the

claim did not arise "from the execution of the removal order, but from the violation of our court's order." *Id*. Essentially, but for the violation of the court-ordered stay of removal, the petitioner would not have had an FTCA claim. *Id*.

In a case nearly identical to the instant matter, a court in this District found that jurisdiction is not barred by Section 1252(g) where the petitioner's claim arose from the Government's grant of deferred action, not the execution of his removal order. *Sepulveda Ayala*, 794 F. Supp. 3d at 908. Like the petitioner here, the petitioner in *Sepulveda Ayala* was also granted deferred action, as well as an employment authorization by USCIS through its U visa BFD process. *Id*. at 906. In support of its finding, the court in *Sepulveda Ayala* relied in part on *Arce* and the Ninth Circuit's holding there that the petitioner's claim arose not from the removal order, but instead from the violation of an order for the petitioner to remain in the United States. The court in *Sepulveda Ayala* also relied in part on a Sixth Circuit case, *Enriquez-Perdomo v. Newman*, 54 F.4th 855 (6th Cir. 2022). *See Sepulveda Ayala*, 794 F. Supp. 3d at 908–09. In *Enriquez-Perdomo*, ICE arrested the petitioner despite her having been granted Deferred Action for Childhood Arrivals ("DACA"). *Enriquez-Perdomo*, 54 F.4th at 858–59. The petitioner sued the arresting officers for Constitutional violations arising from her arrest and detention, but the district court dismissed the claim for lack of jurisdiction under Section 1252(g). *Id*. at 859. The Sixth Circuit reversed, holding that Section 1252(g) did not bar jurisdiction. *Id*. at 865. In considering the terms "removal orders" and "execute" in Section 1252(g), the Sixth Circuit determined that "we read 'removal orders' as referring to *executable* removal orders—that is, existing and enforceable removal orders subject to execution." *Id*. at 863. The court went on to say that the petitioner's removal order was not subject to execution because she had DACA status at the time of arrest and detainment. *Id*.

ORDER ON WRIT OF HABEAS CORPUS – 5

Here, Respondents rely, in part, on a California district court case—*Balogun v. Sessions*, 330 F. Supp. 3d 1211 (C.D. Cal. 2018)—to support their argument that the Court does not have jurisdiction. Dkt. No. 7 at 11. *Balogun* is easily distinguishable, however, because USCIS did not issue a determination that the petitioner's application was bona fide and that he qualified for deferred action. 330 F. Supp. 3d at 1213. Instead, the petitioner in *Balogun* only had a pending application with USCIS, in which USCIS stated that the petitioner's application met the prima facie eligibility requirements. *Id*. In other words, unlike Petitioner, the petitioner in *Balogun* had no formal government order deferring his removal; therefore, he had no basis to challenge his detention. As such, the Court does not find *Balogun* persuasive on this matter.

But for the grant of deferred action, Petitioner would have no basis to challenge his detention. It is thus clear that Petitioner's claims arise from USCIS's grant of deferred action, combined with ICE's refusal to honor that grant, rather than the execution of a removal order. Accordingly, Section 1252(g) does not strip the Court of jurisdiction.

**B.    Deferred Action Prevents Petitioner's Removal**

Petitioner is held under 8 U.S.C. § 1231(a), but the lawfulness of his detention turns on the definition of "deferred action." The Supreme Court described deferred action in *AADC* as meaning "no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *AADC*, 525 U.S. at 484 (quoting 6 C. Gordon, S. Mailman, & S. Yale–Loehr, Immigration Law and Procedure § 72.03 [2][h] (1998)). In support of the definition of deferred action, the *AADC* Court cited to a Fifth Circuit decision. *Id.* (citing *Johns v. Dep't of Justice*, 653 F.2d 884, 890–92 (5th Cir. 1981)). In *Johns*, the court distinguished deferred action from a stay of removal, explaining that deferred action means the Government chooses to "refrain from (or, in administrative parlance, to defer in) executing an outstanding order of deportation." *Johns*, 653 F.2d at 890.

  Not only has the Supreme Court provided guidance for the definition of deferred action, but opinions in the Ninth Circuit also have confirmed that a grant of deferred action prevents its recipient's removal from the United States. *See Lee v. Holder*, 599 F.3d 973, 974–75 (9th Cir. 2010) (interim relief program providing deferred action to U-visa applicants prevented their removal from the United States); *see also Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 958 (9th Cir. 2017) (Kozinksi, J., dissenting) (explaining that while deferred action does not grant legal status, it is the Government's "commitment not to deport"); *Alvarez Leal v. Lynch*, 673 F. App'x 630, 632 (9th Cir. 2017) (Pregerson, J., dissenting) ("For decades, the federal government's mechanism for exercising prosecutorial discretion in the context of immigration enforcement has been deferred action, the formal determination not to remove a particular individual."); *Ayala v. Bondi*, No. C25-01063, 2025 WL 2209708, at *3, 5 (W.D. Wash. Aug. 4, 2025*)* (finding that a grant of deferred action prevents removal and ordering detained petitioner to be released); *B.D.A.A. v. Bostock*, No. C25-2062, 2025 WL 3484912, at *6 (D. Or. Dec. 4, 2025) (finding that "deferred action is an immigration benefit that prevents removal") (quoting *Ayala*, 2025 WL 2209708, at *3)).

  Even USCIS's own policy manual ("Policy Manual") supports Petitioner's position. Although Respondents attempt to use the Policy Manual in support of their argument, the Policy Manual instead undermines Respondents' position. Respondents assert that deferred action simply gives "some cases lower priority for removal," then claim that a definition of deferred action from the Policy Manual supports their assertion. Dkt. No. 7 at 12–13. However, the passage Respondents cite is, as correctly explained by Petitioner, "a descriptive subordinate clause explaining why petitioners need to be in the U.S. to receive deferred action"; that is, the language pertains to petitioners located outside the United States. Dkt. No. 9 at 4–5. The Policy Manual defines deferred action as "a form of prosecutorial discretion to defer removal action

(deportation) against an alien for a certain period of time. *Aliens granted deferred action are considered to be in a period of stay authorized under USCIS policy for the period deferred action is in effect.*" USCIS Policy Manual, Vol. 1, Part H, Ch. 2(A)(4) https://www.uscis.gov/policy-manual/volume-1-part-h-chapter-2 [https://perma.cc/D4EB-V9HG] (emphasis added). Petitioner has been granted deferred action and thus, under the Policy Manual, that grant is enforceable.

Additionally, Respondents argue that there is no ambiguity in USCIS's definition of deferred action, because the BFD notice given to Petitioner stated that deferred action "gives some cases lower priority for removal." Dkt. No. 7 at 2. This, however, would require departing from Supreme Court precedent and USCIS's own Policy Manual. *AADC*, 525 U.S. at 484. Further, "giving cases 'lower priority' naturally flows from the Government's decision not to proceed with removal, the core meaning of deferred action." *Sepulveda Ayala*, 794 F. Supp. 3d at 913.

Lastly, Respondents assert that both 8 U.S.C. § 1227(d) and *Raghav v. Jaddou*, No. C25-408, 2025 WL 373638, at *2 (E.D. Cal. Feb. 3, 2025), support their claims. Section 1227(d)(2) states, "[t]he denial of a request for an administrative stay of removal under this subsection shall not preclude the alien from applying for a stay of removal, deferred action, or a continuance or abeyance of removal proceedings under any other provision of the immigration laws of the United States." In other words, when administrative stays are denied, deferred action is an *alternative*. If deferred action had no effect on removal, as Respondents claim, the statute would not provide it as an alternative. As to *Raghav*, this case is distinguishable. In *Raghav*, like the *Balogun* case cited by Respondents, the petitioner did not have BFD or deferred action. *Raghav*, 2025 WL 373638, at *1. Respondents quote *Raghav*: "Plaintiff obtaining a BFD in his favor would not prevent his removal." Dkt. No. 7 at 13 (quoting *Raghav*, 2025 WL 373638, at *2).

However, this is misleading, because the cited language is dicta that opines about an issue that was not before the court.

In sum, Respondents' arguments are not persuasive to the Court and it is clear that Petitioner's deferred action status prevents removal. As such, Respondents have no legal basis to detain Petitioner.

**C.     Request for Attorney Fees and Costs**

Petitioner should file a fee petition as set forth in the Equal Access to Justice Act, 28 U.S.C. § 2412.

### IV.     CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus (Dkt. No. 1) is GRANTED. It is hereby ORDERED:

(1) Petitioner SHALL be released immediately. Within **twenty-four (24)** hours of this order, Respondents shall provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(2) Any fee petition SHALL be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 12th day of December, 2025.

Tana Lin
United States District Judge